E-FILED
Thursday, 03 October, 2024 09:49:34 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT FOR
THE CENTRAL DISTRICT OF ILLINOIS

BLANCA MALDONADO
Plaintiff

v.

UNITED STATES OF AMERICA
FEDERAL BUREAU OF PRISONS,
WARDEN OF FPC PEKIN,
P.A. DANIELLE SMITH OF FPC PEKIN,

Defendants

## 42 U.S.C. 1983 MOTION
## COMPLAINT

### I. INTRODUCTION AND RELIEF REQUESTED

Petitioner, Blanca Maldonado, ("Petitioner"), who is a Federal prisoner at FPC Pekin, proceeding pro se, hereby requests the injunctive relief and remedy of immediate release to home confinement to avoid the violation of Petitioner's Constitutional rights as afforded to her under the Eighth Amendment, pursuant to Title 42, United States Code Section 1983. Petitioner also requests the sum of $7,000,000 made payable to Petitioner as compensatory damages due to medical negligence and deliberate indifference. Petitioner further requests that the Court impose punitive damages upon the Bureau of Prisons ("BOP") to punish and deter them from future violations against other Adults in Custody ("AIC").

### II. FACTS

Petitioner is unable to get the medical treatment that she desperately requires. The medical staff at FPC Pekin frequently cancel sick call and medical requests submitted electronically to staff go unanswered. She has non-alcoholic cirrhosis of the liver and has needed a transplant for the last 7 years. Her liver failure was diagnosed in the hospital but at the time, Petitioner had no medical insurance and could not obtain any because it was considered a 'pre-existing condition.'

Prior to arriving at FPC Pekin on May 15, 2024, Petitioner was transferred repeatedly between 8 different facilities, spending very short periods of time at each. Due to COVID, she was only able to be briefly hospitalized twice. Once was in San Antonio, Texas and once in Del Rio, Texas. Both times, her hospital stay was very brief. Other medical appointments that she was scheduled for were cancelled or missed, due to being transferred every few weeks or every few months.

Petitioner has seen no one for her medical care or chronic care since arriving at FPC Pekin. She needs to see an oncologist for both her liver and a very large tumor like growth on her left shoulder. She has put in numerous sick call requests to be seen by a doctor or the on-site P.A. Smith, but has never received a response. Petitioner also needs to see a gastroenterologist, as well as have a mammogram done. Her requests and her needs are ignored. Her last oncologist visit was two years ago.

The following is a list of Petitioner's other medical conditions that are not being addressed or treated properly by the BOP:

Petitioner has a rare blood disorder that needs to be addressed by a specialist. She has multiple antibodies in her blood which is highly rare and unusual. Due to this, she is prone to bruising and this is very dangerous for her health. If Petitioner requires a blood transfusion, she requires a special blood type. Her hemoglobin currently registers at a 5, but on a normal individual, hemoglobin should be around 11 or 12. Petitioner is also anemic due to this blood disorder, and she has a very low red blood cell count and very low blood platelets. She is required to have blood work done every 3 months, but the BOP has never adhered to this and refuse to follow the recommendations of previous doctors.

Petitioner is also an insulin dependent diabetic who is required to be on short acting insulin. The BOP medical staff refuse to give her short acting insulin, although it is available to other AICs, and instead, they are giving her one shot a day for a long acting insulin, as well as a weekly shot of Ozempic. Petitioner does not take metformin.

Petitioner is given lactose to combat the liver toxins that flood her system from failing liver. Much more of the time her eyes are jaundiced and yellow from these toxins, and she suffers from an enlarged spleen. She is currently taking 3 water pills a day plus potassium to combat the swelling, fluid retention, and leg cramps caused by her liver failure. She has also been diagnosed with hypertension, but the BOP medical staff will not prescribe medication for this, nor do they check her blood pressure. Additionally, as another side effect or the liver poisoning, Petitioner is having dental problems and all of her teeth are very loose,making it difficult for her to eat.

Petitioner also needs to have her gallbladder removed. She has large gallstones that cause her a great deal of pain,but with her blood disorder and other issues, the BOP refuses to let her have the surgery. Large, painful semoids are also on both of her feet and they make walking very difficult for her. As with all of her health conditions and needs, the BOP has opted to turn a blind eye to her medical needs and have taken a 'hands off' response to any of her care. Petitioner cannot afford to wait any longer. She has been in custody since March 19, 2019 and has not been seen for any of these mentioned medical issues. She is affraid that she will die here!

Petitioner respectfully argues that this District Court does "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. Section 1331.

Section 1983 basically seeks to (1) deter state actors from using badge of their authority to deprive individuals of their federally guaranteed rights, and (2) provide related relief. It was designed to protect individuals against misuse of power made possible only because wrongdoer is clothed with authority of state law. Since the state has created a custodial or other special relationship with a particular class of individuals, courts have recognized that the state may have a constitutionally recognized "affirmative duty" to provide certain "elementary protective services." Jackson, 738 F .2d at 1446-47. Prison inmates represent one such class. In Estelle v. Gamble, 429 U.S. 97, 104-06, 50 L Ed. 2d 251, 97 S Ct. 285 (1976), the Supreme Court recognized a constitutional duty on the part of the state not to be deliberately indifferent to the medical needs of its prison inmates. Although this Eighth Amendment duty has been phrased negatively by the Supreme Court, we have stated that the state has an affirmative obligation "to provide persons in its custody with a medical care system that meets minimal standards of adequacy." Wellman v. Faulkner, 715 F .2d 269, 271 (7th Cir. 1983).

The courts have said that deliberate indifference requires a showing of more than mere or gross negligence, but less than purposeful infliction of harm. Perkins v. Lawson, 312 F .3d 872, 875 (7th Cir. 2002); Proffitt v. Ridgway, 279 F .3d 503, 506 (7th Cir. 2002) (explaining that deliberate indifference to prisoner's safety implies avoidance of KNOWN risk, not merely foreseeable risk). "A detainee establishes a Section 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." Payne for Hicks v. Churchich, 161 F .3d 1030, 1041 (7th Cir. 1998). Although this is a "high hurdle for a plaintiff," Peate v. McCann, 294 F .3d 879, 882 (7th Cir. 2002), one "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842.

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, the United States Supreme Court established a cause of action under the United States Constitution against federal officials in their individual capacities for the violation of federal constitutional rights. The United States Supreme Court has specifically allowed Bivens claims to be brought against federal prison officials based on allegation of deliberate indifference to a serious medical need. In order to establish an Eighth Amendment medical claim, the plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that

indicate deliberate indifference to that need," Natale v. Camden Cty. Correctional Facility, 318 F .3d 575, 582 (3rd Cir. 2003). In Monmouth County Correctional Institute Inmates v. Lanzaro, "a serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention," and "if unnecessary and wanton affliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." In Rouse v. Plantier, 182 F .3d 192, 197 (3rd Cir. 1999), the Judge contended "that the BOP's systematic failure to constitutionally adequate level of care reflected a deliberate indifference to the inmate's medical needs."

In Petitioner's circumstances, the two prong evaluation for an Eighth Amendment claim meets both the objective inquiry and the subjective inquiry. The objective inquiry is met in Farmer v. Brennan, 511 U.S. 825, 834, 114 S Ct. 1970, 128 L. Ed. 2d 811 (1994), where it states "alleged deprivation is 'sufficiently serious' that the action or inaction of a prison employee leads to the denial of the minimal civilized measure of life's necessities."

The subjective inquiry is also met in Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 911 (1994), where it states that "a prison official may be held liable for denying to a prisoner humane conditions of confinement, under the rule that an official's 'deliberate indifference' to a substantial risk of serious harm to a prisoner violates the Eighth Amendment, only if the official is subjectively aware that the prisoner faces such a risk and disregards that risk by failing to take reasonable measures to abate the risk" and "prison conditions could constitute cruel and unusual punishment without any officials' improper subjective motivations." In Board v. Farnham, 394 F .3d 469, 478 (7th Cir. 2005), it states that "inhumane and inadequate conditions that existed during confinement infringed on constitutional rights." Furthermore, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse v. Plantier, 182 F .3d 192, 197 (3rd Cir. 1999).

28 C.F.R. Section 542.10, "provides inmates with the ability to seek formal review of an allegation of inadequate medical care," and 42 U.S.C. Section 1983, states that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Quincy West v. Samuel Atkins, (1988) 487 US 42, 101 L Ed 2d 40, 108 SCT 2250, states "a physician who is employed by the BOP is acting 'under the color of state law.' " Petitioner is alleging a denial of her rights, under the Federal Constitution's Eighth Amendment, to be free from cruel and unusual punishment. "(1) A physician who provides medical service to inmates acts 'under color of state law' within the meaning of 42 U.S.C. Section 1983, when an inmate is treated; and (2) that defendants are not removed from purview of Section 1983 simply because they are professionals acting in accordance with

professional discretion and judgment. A physician who acts on behalf of the state to provide needed medical attention to a person who is involuntarily in custody and cannot otherwise obtain such care, and who causes physical harm to such a person by deliberate indifference, deprives that  person of liberty without due process in violation of the Federal Constitution's Fourteenth Amendment."

IV. EXHAUSTION OF REMEDIES

Exhaustion of remedies is futile in Petitioner's case. She has not been able to file her administrative remedies as required due to futility, based on the following facts: the administrative staff refuse to accept electronic cop-outs, requesting paper cop-outs only, which are then shredded or thrown away. The staff are restricting the inmates from filing official administrative remedies by only allowing them to obtain one BP-8, per inmate, per week - which then must be turned in no earlier than the following week, and only at Open House when it is called by the Camp Counselor, Mr. Newman. The process is then delayed even further due to the staff not allowing the inmates to then receive a blank BP-9 form until the week after that. The reason that the Camp Counselor 'provided' for this restriction was that "the administrative staff at FPC Pekin do not have the time to process our administrative remedies since the Supreme Court ruled on the Loper case. The Supreme Court created too much work for the BOP." Any further effort on trying to file the remedies is fruitless and it would take 120 days or more to go through the four-step procedure to address a single claim. In Woodley v. Warden, USP Leavenworth, 24-3053-JWL, (United States District Court, District of Kansas, May 15, 2024), the judge stated that "Petitioner is correct that [a] narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." In the case of Doe v. Federal Bureau of Prison, 23-cv-5965 (AT)(JLC), (USDC SD NY, 12-28-2023), the petitioner claimed "that the BOP violated federal statutes by failing to allow them to exhaust their administrative remedies, and an exception applied due to futility."

VERIFICATION:

I have read the foregoing petition and hereby verify that the matters are true and correct to the best of my ability.

Executed at Pekin, Illinois on this ___September___ day of ___29___, 2024.

_Blanca Maldonado_
Blanca Maldonado, Reg #
FPC Pekin
PO Box 5000
Pekin, IL 61555-5000